HIGGINBOTHAM, J.
In this medical malpractice case, plaintiffs, Mr. Milton Lee Harris and Mrs. Lisa Harris, appeal the trial court judgment granting defendant's, Dr. Stephen M. Breaud, declinatory exception raising the objection of lis pendens and peremptory exception raising the objection of prescription.
FACTS AND PROCEDURAL HISTORY
In February 2009, Mr. Harris was evaluated by his ophthalmologist, Dr. Breaud, for difficulties he was experiencing with his vision. In an effort to improve Mr. Harris's vision, Dr. Breaud performed a number of procedures on Mr. Harris's eyes including: a laser procedure on Mr. Harris' left eye on May 11, 2009; a surgical vitrectomy on May 28, 2009; a surgical vitrectomy on December 29, 2009; a laser procedure on Mr. Harris's left eye on April 20, 2010; and a laser procedure to Mr. Harris's retina on October 25, 2010. After Mr. Breaud completed the December 29, 2009 vitrectomy, Mr. Harris went into cardiac arrest which resulted in hospitalization in the intensive care unit.
Thereafter, on December 15, 2010, Mr. Harris, through his attorney, requested the formation of a Medical Review Panel (MRP) pursuant to the provisions of the Louisiana Medical Malpractice Act to evaluate his claim arising out of the treatment he was provided on December 29, 2009, by Dr. Breaud as well as the anesthesiologist, Dr. James Sharpless, and the nurse anesthetist, Ms. Amanda Meckes. In the request, Mr. Harris stated that "as a result of [d]efendants' negligent and careless treatment and monitoring of Mr. Harris, he was inflicted with cardiac arrest, which resulted in intensive care hospitalization, continued treatment of the vitreous hemorrhage to the left eye, and further cardiac *575 instability." After reviewing the submissions of the parties, the MRP issued its opinion finding no evidence that Dr. Breaud failed to meet the applicable standard of care and pointed out that the record indicated subsequent improvements of vision and resolution of the vitreous hemorrhage, that indicated Mr. Harris suffered no negative effects from Dr. Breaud's actions.
On December 3, 2012, Mr. Harris and his wife, Lisa Harris, filed suit in section D of the 19th Judicial District Court, assigned as case number 617,420, alleging Dr. Breaud breached the applicable standard of care in failing to conduct a proper examination, failing to order appropriate testing, performing unnecessary laser surgeries, failing to perform laser surgery in an appropriate fashion, failing to perform vitrectomies in an appropriate medically acceptable fashion, failing to render appropriate follow-up treatment, and such other acts/and or omissions as were presented before the MRP. According to the Harrises' petition Dr. Breaud's negligence resulted in Mr. Harris experiencing a loss of vision, physical and mental pain, physical impairment, and loss of enjoyment of life. The Harrises' petition pointed specifically to the procedures performed by Dr. Breaud on May 11 and 28, 2009, December 29, 2009, April 20, 2010, and October 25, 2010.
The Harrises' petition was met with an exception of prematurity filed by Dr. Breaud on all claims other than the claims related to the December 29, 2009 procedure, because the other procedures were not raised before a MRP as required by La. R.S. 40:1231.8(B)(1)(a)(i).[1] The Harrises acknowledged that the claims related to all procedures other than the December 29, 2009 procedure were premature and signed a stipulated judgment on the exception of prematurity dismissing all of their claims "referable to any care rendered by [Dr. Breaud] to [Mr. Harris] on any date other than December 29, 2009." The stipulated judgment acknowledged that "the claim for breach of the standard of care on December 29, 2009, previously submitted for review by a duly convened [MRP] [was] not subject to this dismissal."
On May 15, 2013, Mr. Harris filed a second request with the Division of Administration, for invocation of an MRP seeking review by the MRP of the procedures performed by Dr. Breaud on May 11 and 28, 2009, December 29, 2009, April 20, 2010, and October 25, 2010, alleging that the treatment Dr. Breaud provided to Mr. Harris "was of continuing nature and had a cumulative effect." The second request for an MRP expired without an opinion by operation of law on or about September 12, 2015.[2]
*576 Thereafter, on December 8, 2015, the Harrises filed a second suit, the present petition for damages, (19th Judicial District Court Section 22 case number 644,353) pointing out the same procedures performed by Dr. Breaud as discussed in their petition filed under case number 617,420, including the vitrectomy performed on December 29, 2009. In response, Dr. Breaud filed a declinatory exception of lis pendens contending that the procedure performed on December 29, 2009, is the same procedure for which a claim was made and not dismissed in the case pending under docket number 617,420. Thus, because there are two suits pending on the same transaction and occurrence and between the same parties, Dr. Breaud maintained that the current suit should be dismissed in accordance with La. Code Civ. P. art. 531. Dr. Breaud also filed a peremptory exception of prescription on the remaining claims asserted by the Harrises, contending that all acts complained of in the second MRP request occurred more than one year prior to the filing of that request, on May 15, 2013, and all but the October procedure occurred more than three years prior to the invocation of the MRP. The lis pendens and prescription exceptions came before the trial court on October 24, 2016, wherein the trial court heard arguments of counsel, but no evidence was offered or received. After the hearing, both exceptions were granted in favor of Dr. Breaud.
The trial court signed two separate judgments: one granting Dr. Breaud's lis pendens exception and the other granting Dr. Breaud's prescription exception. As each judgment was a partial judgment lacking the proper decretal language, and neither was designated as final judgment by the trial court, this court issued an order to the parties to show cause why the appeal should not be dismissed and remanded for the limited purpose of allowing the trial court to sign a judgment addressing the noted defects. In response, the trial court signed a new single judgment on August 2, 2017, that granted both the exception of prescription as well as the exception of lis pendens and decreed that because the present judgment dismissed all claims asserted by the Harrises and left no claim or issue unresolved, the judgment constituted a final judgment. In response, this court maintained the Harrises' appeal, but reserved a final determination as to whether this appeal was to be maintained to this panel, the panel assigned the appeal. As the issues in both appeals were included in a single judgment, we maintain the appeal and address both appeals in this opinion. In their appeals, the Harrises assert the following as error: (1) the trial court signed a judgment that was inconsistent with its ruling in open court; or (2) in the alternative, the trial court erred in granting Dr. Breaud's lis pendens exception; and (3) the trial court erred in granting Dr. Breaud's prescription exception.
LAW AND ANALYSIS
LIS PENDENS
In their first assignment of error, the Harrises contend that the trial court erred in signing a judgment inconsistent with its ruling in open court. It is the position of the Harrises that in oral reasons for judgment, the trial court specifically stated "I have to grant the lis pendens on the cardiac event of December 9, 2009," and therefore the trial court's ruling was limited to the treatment related to the cardiac arrest on December 9, 2009, and did not encompass complaints related to Mr. Harris's eyes or vision. However, the judgment signed by the trial court states "the Declinatory Exception of Lis Pendens as it *577 relates to any claim regarding treatment on December 29, 2009, is hereby granted."
A judgment and reasons for judgment are two separate and distinct legal documents and appeals are taken from the judgment, not the written or oral reasons for judgment. The court of appeal reviews judgments and, where the court of appeal believes that the trial court reached the proper result, the judgment will be affirmed. Accordingly, even if the trier of fact erred in findings of fact, we are constrained to affirm the judgment if the judgment is reasonable in light of the record as a whole. Huang v. Louisiana State Bd. of Trustees for State Colleges and Universities, 99-2805 (La. App. 1st Cir. 12/22/00), 781 So.2d 1, 6. Thus, our review is limited to the judgment signed by the trial court that dismissed all claims related to treatment on December 29, 2009. The Harrises' first assignment of error is without merit.
In their second assignment of error, the Harrises contend that the trial court erred in granting the exception of lis pendens. A declinatory exception of lis pendens declines jurisdiction over a second suit where a prior suit is pending between the same parties, in the same capacities, on the same transaction or occurrence. La. Code Civ. P. arts. 531, 923, and 925(3). If two or more essentially identical suits are pending in Louisiana courts, the defendant may have all but the first filed action dismissed. La. Code Civ. P. art. 531.
The Harrises' petition filed in the first suit, case number 617,420, was clearly between the same parties as the current suit, but the Harrises argue that the second suit involves damages related to Mr. Harris's eyes and the first suit only involved damages related to Mr. Harris going into cardiac arrest.[3] We find no merit to this argument. The Harrises' petition in case number 617,420 states "On December 29, 2009, Dr. Breaud reportedly performed a trans pars plana vitrectomy.... This procedure was performed at Perkins Plaza Ambulatory Surgery Center." The petition also states Dr. Breaud breached the applicable standard of care in his "[f]ailure to perform vitrectomies in an appropriate medically acceptable fashion," and sought damages for "[l]oss of vision." In fact, the petitions filed in both suits contain almost identical allegations and requests for damages. Additionally, the 617,420 petition sought review of the acts that were presented before the MRP which clearly included the vitrectomy performed by Dr. Breaud on December 29, 2009. After review of both lawsuits filed by the Harrises, it is clear that the current suit is based on the same transaction or occurrence and between the same parties in the same capacities as the first suit filed in case number 617,420; therefore, we affirm the portion of the trial court judgment *578 granting Dr. Breaud's exception of lis pendens on any claims regarding Dr. Breaud's treatment of Mr. Harris on December 29, 2009.
PRESCRIPTION
In the related appeal, the Harrises contend that the trial court erred in holding that all matters related to procedures, other than the December 29, 2009, procedure were prescribed. Prescription for medical malpractice claims is set forth in La. R.S. 9:5628(A), which provides:
No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1231.1(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
Louisiana Revised Statute 9:5628 has been referred to as a "tripartite prescription provision," meaning that the statute has three parts. In re: Medical Review Panel for Claim of Moses, 2000-2643 (La. 5/25/01), 788 So.2d 1173, 1178. First, a one-year prescriptive period, which follows the same time frame as a traditional tort, is the general rule. Id., 788 So.2d at 1178-79 Second, when an injury is not immediate and apparent, there is a discovery exception to the general rule, known as contra non valentum , providing that such actions prescribe one year from the date of discovery of the alleged act, omission, or neglect. Id. Third, a period of three years has been placed on all claims, regardless of discovery. Id. at 1178. Both the one-year and three-year periods set forth in La. R.S. 9:5628 are prescriptive, with the qualification that the contra non valentem type exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the act, omission, or neglect. Borel v. Young, 2007-0419 (La. 11/27/07), 989 So.2d 42, 48 (on rehearing).
Ordinarily, the party pleading prescription bears the burden of proving the claim has prescribed. However, when the face of the petition reveals that the plaintiffs' claims have prescribed, the burden shifts to the plaintiffs to demonstrate prescription was suspended or interrupted. Johnson v. Shafor, 2008-2145 (La. App. 1st Cir. 7/29/09), 22 So.3d 935, 938-39, writ denied, 2009-1921 (La. 11/20/09), 25 So.3d 812. When, as in this case, no evidence is introduced at the hearing to support or controvert the exception of prescription, the exception must be decided upon facts alleged in the petition with all allegations accepted as true.[4] See La. Code Civ. P. art. 931 ; Cichirillo v. Avondale Industries, Inc., 2004-2894 (La. 11/29/05), 917 So.2d 424, 428. If no evidence is introduced to support or controvert the exception, the manifest error standard of review does not apply, and the appellate court's role is to determine whether the trial court's ruling *579 was legally correct. See Atain, 193 So.3d at 190.
In their second petition, the Harrises discussed specifically the procedures performed by Dr. Breaud on May 11 and 28, 2009, December 29, 2009, April 20, 2010, and October 25, 2010, and alleged that the treatment rendered by Dr. Breaud was of a continuing nature and had a cumulative effect. The petition also noted that Mr. Harris continued treatment with Dr. Breaud through January 17, 2011. For all procedures other than the December 29, 2009 procedure, the Harrises filed their petition for invocation of the MRP on May 15, 2013. In their petition, the Harrises do not allege a date of discovery of the alleged malpractice. All of the procedures complained of by the Harrises occurred more than one year before the Harrises' filed their action, and on the face of the petition, the Harrises' claims prescribed prior to the invocation of the MRP. Additionally, all procedures other than the laser procedure performed on October 25, 2010, occurred more than three years prior to the invocation of the MRP. Because the Harrises' claims are all prescribed on the face of the petition, the Harrises, as the party asserting a suspension or interruption of prescription, bear the burden of proof.
In support of their position that their claims are not prescribed, the Harrises set forth two theories. First, the Harrises contend that the allegations of inadequate medical care were only discovered after the Harrises changed counsel sometime after July 30, 2012, and thus were timely filed within one year of the date of discovery. Second, the Harrises contend that the treatment by Dr. Breaud was of a continuing nature and with a cumulative effect and under the continuing tort doctrine, prescription did not commence until the tortious conduct was abated and the relationship terminated, which they contend was on Mr. Harris's final visit to Dr. Breaud on January 17, 2011.
I. Date of Discovery
The Harrises' contention that the inadequate medical care was only discovered after the Harrises changed counsel is a contra non valentem type exception to prescription. Specifically, the discovery rule, which is encompassed in the fourth category of contra non valentem , provides that "prescription does not begin to run until the plaintiff knows sufficient facts and has a reasonable basis for filing suit against a certain defendant." Fontenot v. ABC Ins. Co., 95-1707 (La. 6/7/96), 674 So.2d 960, 964. In Borel, the Louisiana Supreme Court reaffirmed its prior holding that both the one-year and three-year periods set forth in La R.S. 9:5628 are prescriptive, with the qualification that the contra non valentem type exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the act, omission, or neglect. Borel, 989 So.2d at 69. Thus all claims that are subject to the prescription exception other than the October 25, 2010, procedure, regardless of the date of discovery, are prescribed as the invocation of a MRP was filed after the three-year period eliminating the suspension of prescription as to such three-year period.
Therefore, the only allegation that the discovery rule could be applicable to is the treatment performed on October 25, 2010. The petition states only that Dr. Breaud performed a laser procedure to Mr. Harris's retina on October 25, 2010, but does not give an alleged date of discovery. Because the Harrises' petition was prescribed on its face, the Harrises had the burden of proving that their claims were not prescribed. In this matter, the Harrises' petition did not contain any allegations or *580 facts whatsoever regarding an inability to discover the alleged acts of malpractice against Dr. Breaud on October 25, 2010. Moreover, the Harrises did not produce any evidence at the hearing to support their claim that they were unaware of the alleged malpractice prior to obtaining new counsel. Thus, the trial court was legally correct in concluding that the Harrises failed to meet their burden of proving a suspension of prescription.
II. Continuing Tort
In order to allege a continuing tort, a plaintiff must allege both continuous action and continuous damage. The Louisiana Supreme Court discussed the continuing tort concept in South Central Bell Telephone Company v. Texaco, Inc., 418 So.2d 531, 533 (La. 1982), stating that "[w]hen the tortious conduct and resulting damage continue, prescription does not begin until the conduct causing the damage is abated." A continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act. Marin v. Exxon Mobil Corp., 2009-2368 (La. 10/19/10), 48 So.3d 234, 253 ; Crump v. Sabine River Authority, 98-2326 (La. 6/29/99), 737 So.2d 720, 728. The inquiry is essentially a conduct-based one, asking whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts. Hogg v. Chevron USA, Inc., 2009-2632 (La. 7/6/10), 45 So.3d 991, 1003. In a medical malpractice case, a series of radiation treatments negligently administered to a plaintiff who was misdiagnosed with cancer that allegedly resulted in the plaintiff's death was held to be a continuing tort in Winder v. Avet, 613 So.2d 199, 202 (La. App. 1st Cir. 1992), writs denied, 617 So.2d 907 (La. 1993). Similarly, a course of administration of narcotic drugs spanning several years that allegedly resulted in addiction was held to be a continuing tort in Chiasson v. Doe, 618 So.2d 38, 41 (La. App. 3d Cir.), writ denied, 624 So.2d 1225 (La. 1993). Another illustration of a course of narcotic drug administration that was held to be a continuing tort is found in Page v. United States, 729 F.2d 818, 822-23 (D.C. Cir. 1984). A common characteristic shared by Winder, Chiasson, and Page, is that they present a plaintiff who was harmed as a result of the cumulative effect of a course of negligent treatment, not by a single act of malpractice.
Although the Harrises' petition contends that Dr. Breaud's final treatment of Mr. Harris was on January 17, 2011, the Harrises introduced no evidence whatsoever to support their argument that Dr. Breaud's continued treatment of Mr. Harris caused continued damage. Typically, courts have found torts to be continuous in nature when each individual act would not necessarily give rise to a cause of action; rather, it is the cumulative effect of regularly occurring or continuous actions that results in successive damages from day to day. See Hunter v. Tensas Nursing Home, 32,217 (La. App. 2d Cir. 10/27/99), 743 So.2d 839, 842, writ denied, 99-3334 (La. 2/4/00), 754 So.2d 228.
The vague allegations of negligence in the petition set forth separate and distinct acts rather than continuous actions that resulted in successive damages. Since the Harrises presented no evidence at the hearing to prove that the continuous treatment by Dr. Breaud had a cumulative effect on Mr. Harris's vision, we find no merit to the Harrises' contention that Dr. Breaud's treatment constituted a continuing tort.
Furthermore, even if evidence of a continuing tort was in the record, the final treatment of Mr. Harris by Dr. Breaud noted in the record was on January 17, 2011, more than one year prior to filing for *581 the invocation of the MRP. Again, nothing in the petition indicated a different date of discovery other than the day of the final treatment, and the one-year prescriptive period would apply. Therefore, we find the trial court was legally correct in finding that the Harrises' claims, other than for the December 29, 2009, procedure, are prescribed.
Additionally, we note that La. Code Civ. P. art. 934 provides, when the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, the action shall be dismissed. The decision to allow amendment of a pleading to cure the grounds for a peremptory exception is within the discretion of the district court. Pearl River Basin Land & Dev. Co., LLC v. State ex rel. Governor's Office of Homeland Sec. & Emergency Preparedness, 2009-0084 (La. App. 1st Cir. 10/27/09), 29 So.3d 589, 594. In this matter, the Harrises did not provide any written response to Dr. Breaud's exception of prescription nor did they provide any evidence, testimonial or otherwise, at the hearing demonstrating that prescription had been interrupted or suspended in any way or that their claim had otherwise not prescribed. For the reasons stated above, we find the plaintiffs failed to present any evidence that the grounds for the exception of prescription can be removed by amendment to the petition. Accordingly, the district court did not abuse its discretion in not ordering amendment of the petition with regard to the Harrises medical malpractice claims.
CONCLUSION
For the foregoing reasons, the August 2, 2017, judgment of the trial court granting Dr. Breaud's peremptory exception of prescription for the treatments dated February 2, 2009, May 11 and 28, 2009, April 20, 2010, and October 25, 2010, and granting Dr. Breaud's declinatory exception of lis pendens as it relates to any claim regarding treatment on December 29, 2009, is affirmed. All costs of this proceeding are assessed to Mr. Milton Lee Harris and Mrs. Lisa Harris.
AFFIRMED.

Louisiana Revised Statute 40:1231.8(B)(1)(a)(i) provides: "No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section."

Louisiana Revised Statute 40:1231.8(B)(l)(a)(i)(b) provides in pertinent part:
[I]f an opinion is not rendered by the panel within twelve months after the date of notification of the selection of the attorney chairman by the executive director to the selected attorney and all other parties pursuant to Paragraph (1) of Subsection C of this Section, suit may be instituted against a health care provider covered by this Part. However, either party may petition a court of competent jurisdiction for an order extending the twelve month period provided in this Subsection for good cause shown. After the twelve month period provided for in this Subsection or any court-ordered extension thereof, the medical review panel established to review the claimant's complaint shall be dissolved without the necessity of obtaining a court order of dissolution.

We note that the copy of the petition in case number 617,420 was attached to Dr. Breaud's exception, but no evidence was introduced at the hearing on the exception of lis pendens. However, neither side disputes the existence of the other suit nor objected to consideration of the evidence in the trial court or on appeal, and the trial court, in considering the exception, could properly take judicial notice of the relevant facts with regard to the other suit that was also filed in the 19th JDC. See AmSouth Bank v. Unemployment Compensation Control Systems, LLC, 2005-0253 (La. App. 1st Cir. 5/8/09), 2009 WL 1270295 *3 (unpublished) and La. Code Evid. art. 201. See also Ascension School Employees Credit Union v. Provost, Salter, Harper & Alford, LLC, 2004-1227 (La. App. 1st Cir. 6/10/05), 916 So.2d 252, 257. Because the requirement to establish the exception raising the objection of lis pendens conforms to the requirements of res judicata, a court must determine whether a judgment in the first-filed suit would bar the claims asserted in the subsequent suit. See Newman v. Newman, 96-1062 (La. App. 1st Cir. 3/27/97), 691 So.2d 743, 745.

Unless properly offered and introduced into evidence, documents attached to memoranda do not constitute evidence and cannot be be considered on appeal. Atain Special i ty Ins. Co. v. Premier Performance Marine, LLC, 2015-1128 (La. App. 1st Cir. 4/8/16), 193 So.3d 187, 190.